## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| NATHANIEL RHODES, JR.,<br>    Petitioner,<br>  vs.<br><br>DAVID A. VARANO, et al.,<br>    Respondents. | CIVIL NO. 08-3236 |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                    **July 29, 2011**

On July 9, 2008, petitioner Nathaniel Rhodes filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from his conviction for robbery and receiving stolen property. On March 26, 2009, Magistrate Judge Elizabeth T. Hey issued a Report and Recommendation ("R&R") recommending that Rhodes's petition be conditionally granted. The Commonwealth timely filed objections to the R&R. After the Commonwealth's objections were filed, Petitioner moved for a federal evidentiary hearing. For the reasons set forth below, the Court will adopt in part and reject in part the R&R and will sustain Respondent's Objections to the Report and Recommendation of Judge Hey. Petitioner's Motion for an Evidentiary Hearing, and his Petition for Writ of Habeas Corpus will be denied.

1

## I. BACKGROUND[1]

A.    THE STATE COURT PROCEEDINGS

On November 22, 2003, Rhodes, an African American, robbed a convenience store of $42.00.[2] He was apprehended shortly thereafter and charged with various counts of robbery and theft.[3]

At trial, Assistant Public Defender Steven Heckman represented Rhodes. Jury selection took place on March 10, 2004, the first day of trial. The forty-five member venire from which the jury was selected included four African-Americans,[4] respectively assigned prospective juror numbers 5, 21, 33, and 35.[5] During voir dire, two of those prospective jurors—21 and 35—were struck for cause.[6]

After striking jurors for cause, the defense and prosecution exercised their peremptory strikes. The prosecutor used his sixth peremptory challenge to strike prospective Juror Number 5, to which the defense objected under Batson v. Kentucky.[7] In response, the Trial Court

---

[1] The facts of this case are set forth in detail in the Report and Recommendation. Accordingly, the Court recites only those facts necessary to rule on the Commonwealth's objections.

[2] Commonwealth v. Rhodes, No. 08491-03, at 1 (Mont. C.C. Pl. Aug. 27, 2004) ("Trial Court Op.").

[3] Id. at 1–4.

[4] As Magistrate Judge Hey notes, the record contains a reference to the possible presence of another black juror. R&R at 12. But, as she explains, "the Commonwealth has not asserted in its briefs that an African American served on the jury, and did not rebut Rhodes' direct appellate counsel's description of the jury as "an all white twelve member jury." Id. Thus, as the record stands, the above-listed jurors were the only African Americans in the venire.

[5] N.T. 3/10/04 at 45.

[6] Voir Dire of Prospective Jurors, N.T. 3/10/ 2004 at 42, 83.

[7] N.T. 3/10/04 at 46. In Batson, 476 U.S. 79 (1986), the Supreme Court held that the "racially discriminatory exercise of peremptory challenges by a prosecutor is a violation of the equal protection

2

permitted the prosecutor to justify the strike on the record.[8] The prosecutor explained that

> First, there is no pattern as required by Batson. There's only one strike. . . .
> Number 5 has a shoplifting conviction when she was 21 . . . I don't want someone
> on a jury when this is -- there's a theft conviction dealing with a theft case.[9]

Mr. Heckman objected that the prosecutor's reasons were not race neutral, but the Court rejected

his objection:

> Okay. First and foremost, I find that there is not a pattern seeing that there are
> two and one is on and one is off. And although you may not agree with his
> reasons, the Court would find that these are at least race neutral. He has
> enunciated the fact that she has a prior criminal conviction even though she did on
> voir dire indicate that that would not prevent her from being fair and impartial. . . .
> So I deny your challenge on [Batson v. Kentucky].[10]

Later that day, after the jury had adjourned, Mr. Heckman raised a second

Batson challenge to the prosecutor's use of his seventh and last peremptory challenge to strike

(non-African-American) Juror Number 41.[11] Heckman explained that the "below the line" strike

against Juror Number 41 predictably resulted in Juror Number 33 (an African-American female)

being seated as an alternate rather than as a juror. He described the strike as "below the line"

because Juror Number 41 did not have a chance of being seated on the jury. In the jury selection

system used by the Pennsylvania trial court, jurors are assigned numbers, and the presumptive

---

clause." Jones v. Ryan, 987 F.2d 960, 966 (3d Cir. 1993).

[8] N.T. 3/10/04 at 46.

[9] The prosecutor also noted that Juror Number 5 was a social case worker, and her husband worked with juvenile defendants at a placement home.

[10] N.T. 3/10/04 at 46.

[11] Under Pennsylvania Rules of Criminal Procedure, "[i]n trials involving a non-capital felony and when there is only one defendant, the Commonwealth and the defendant shall each be entitled to 7 peremptory challenges. See Pa. R. Crim P. 634(A)(2).

jury consists of jurors number 1–12. When one of those jurors is struck, the next moves into the presumptive jury pool. Thus, at a certain point, attorneys can predict the chance of a certain juror moving into the pool. Heckman argued that when the Commonwealth struck "below the line" of jurors who could potentially enter the jury box, it effectively struck Juror Number 33, an African American who was next in line. If the prosecutor had exercised the strike "above the line," Juror Number 33 would have been seated as a juror.

In response to the challenge, the Trial Court discussed the record of strikes that preceded the "below the line" strike, and asked the defense attorney to "[e]nunciate for me how Batson says you can then -- when he struck a non-African American below the line how that is included in a Batson challenge."[12] Defense counsel explained that "the effect of it was to deny any black . . . juror on the 12 person jury."[13] Apparently unsatisfied with that explanation, the Trial Court overruled the objection.[14]

Ultimately, a twelve-member, all-white jury was empaneled for the trial, with Juror Number 33 (an African-American female) serving as the alternate juror. During the trial, it did not become necessary for the alternate juror to be seated. The jury convicted Rhodes of four counts of Robbery, one count of Theft by Unlawful Taking; and one count of Theft by Receiving Stolen Property.[15] Rhodes was subsequently sentenced to twenty-five to fifty years of imprisonment on the most serious robbery count, pursuant to Pennsylvania's "three strikes"

---

[12] N.T. 3/10/04 at 52–53.

[13] N.T. 3/10/04 at 53.

[14] N.T. 3/10/04 at 53.

[15] Trial Court Op. at 1–4.

4

provision.[16]

After sentencing, in a post-trial opinion,[17] the Trial Court revisited, and again rejected, Rhodes's Batson challenge to the prosecutor's peremptory strikes.[18]  In so holding, the Court emphasized the "lack of factual support" for the challenge, and concluded that the "Commonwealth's conduct during jury selection does not support a finding that it improperly precluded African Americans from being selected to the jury."[19]  Although the Trial Court did not specifically discuss the strike against Juror Number 41, it pointed to Juror Number 33's inclusion as an alternate juror as evidence of the prosecutor's lack of racial animus.[20]

Rhodes promptly appealed his conviction and sentence to the Superior Court, again objecting, *inter alia*, to the prosecutor's use of peremptory strikes at trial.[21]  On May 2, 2005, the Superior Court affirmed the Trial Court's ruling, holding that "it cannot be concluded that any pattern of singling out members of a single race for peremptory challenges existed."[22]  Rhodes timely filed a Petition for Allowance of Appeal which challenged only the peremptory strikes

---

[16] Report and Recommendation, No. 08-03236, 2009 WL 805506, at *2, *4 (E.D. Pa. March 26, 2009) ("R&R").

[17] Pursuant to the Pennsylvania Rules of Appellate Procedure, "upon receipt of the notice of appeal . . . shall . . . file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of. . . ."  See Pa. R. App. Pro. 1925(a)(1).

[18] Trial Ct. Op. at 9–10.

[19] Trial Ct. Op. at 9.

[20] Trial Ct. Op. at 10.

[21] R&R at 4, see also Commonwealth v. Rhodes, 1971 EDA 2004, 880 A.2d 11 (Pa. Super. May 2, 2005) (Table) ("Super. Ct. Op.").

[22] Super. Ct. Op. at 11.

5

used by the prosecutor during jury selection.[23] The Pennsylvania Supreme Court denied discretionary review.[24]

Rhodes then filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA") in the Montgomery County Court of Common Pleas, raising seven claims of ineffective assistance of counsel.[25] His petition did not reassert the Batson challenge. After holding an evidentiary hearing on September 20, 2006, the Trial Court denied Rhodes' petition, and was affirmed by the Superior Court.[26] Rhodes did not seek review in the Pennsylvania Supreme Court.

B.   THE PENDING PETITION FOR HABEAS CORPUS

Rhodes timely filed the pending federal petition for habeas corpus, which raised nine claims[27] asserting that: (1) Rhodes's trial and appellate counsel was ineffective;[28] (2) the state

---

[23] Commonwealth v. Rhodes, 1971 EDA 2004, Pet. for Allowance of Appeal from J. of Super. Ct. (May 2, 2005).

[24] Commonwealth v. Rhodes, 889 A.2d 88 (Pa. 2005) (table).

[25] See Commonwealth v. Rhodes, 951 A.2d 1216 (Pa. Super. Ct. 2008) (Table) ("PCRA Appeal Op.") Rhodes encountered some difficulty securing counsel at the PCRA level. After filing his PCRA petition, new counsel notified the PCRA court that he had been retained by Rhodes's family and would file an amended petition. After that attorney failed to either enter his appearance or file an amended petition, Rhodes, acting pro se, filed an amended petition. Subsequently, the PCRA court appointed new counsel who reviewed the amended petition, and informed the PCRA court that the petition had arguable merit and should go forward. PCRA Appeal Op. at 3.

[26] See Commonwealth v. Rhodes, 1942 EDA 2007 (Pa. Super. Ct. Sept. 17, 2007).

[27] Rhodes originally filed pro se; after the Trial Court appointed counsel, he filed an amended petition.

[28] Rhodes contends that the state courts erred in failing to suppress a photographic array and subsequent in-court identification made by one of the Commonwealth's witnesses because the array was unduly suggestive. R&R at 6.

6

courts erred by failing to suppress certain identification evidence;[29] and (3) the prosecutor improperly used his peremptory strikes to prevent African Americans from serving on the jury, in violation of Batson.

This Court referred Rhodes's petition to Magistrate Judge Elizabeth T. Hey, who issued her R&R, recommending that the Court grant relief on Petitioner's Batson claim regarding the "below the line" strike of Juror Number 41. This recommendation was based on her determination that (1) the Superior Court, by misconstruing the trial judge's ruling on the Batson challenge to the "below the line" strike, arrived at a "decision . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," and (2) the Trial Court's determination that the strike did not implicate Batson was an "unreasonable application of clearly established law."[30] Based on those findings, the Magistrate recommended that the "writ be granted, but stayed to give the state court the opportunity to conduct a proper Batson inquiry."[31] Alternatively, the Magistrate suggested that a federal evidentiary hearing "would be appropriate in this case."[32]

_____

[29] Rhodes asserted his trial counsel was ineffective for "failing to file a pretrial motion for a physical line-up; failing to call a police sergeant as a witness for the defense; failing to object to certain identification testimony; eliciting testimony from police officers regarding their prior contact with Rhodes; and withdrawing the objection to the Commonwealth's request that the jury be given certain evidence at the start of deliberation. He also claimed his appellate counsel was ineffective for failing to file a post sentence motion, and for failing to raise a sufficiency of the evidence claim on direct appeal. R&R at 5.

[30] R&R at 29.

[31] R&R at 30–32.

[32] R&R at 34 n.19. The Magistrate found no merit in Petitioner's remaining claims. In regard to the five ineffective assistance claims that had previously been adjudicated by the state courts, the magistrate concluded that those state court rulings were consistent with governing Supreme Court law, and a reasonable determination of the facts. R&R at 40–45, 48–49, 50–51. As for the two remaining

7

The Commonwealth filed objections to the Magistrate's R&R, raising three arguments as to why the Court should not grant relief on the basis of petitioner's <u>Batson</u> claim.[33] First, the Commonwealth argues that the Magistrate improperly "limited the scope of deference owed to the state courts under 28 U.S.C. § 2254(d)."[34] Second, the Commonwealth asserts that the Magistrate misinterpreted what is "clearly established law" for purposes of habeas review.[35] Finally, the Commonwealth objects both to the Magistrate's recommendation to grant a conditional writ to allow the state court to conduct a <u>Batson</u> hearing, and to her alternative recommendation that this Court conduct a federal evidentiary hearing.[36]

On January 21, 2011, noting that this Court does "not have authority under the federal habeas statutes, 28 U.S.C. §2241 or § 2254, to remand a habeas corpus petition to a state court for an evidentiary hearing," Petitioner moved for an evidentiary hearing regarding his <u>Batson</u> claim in this Court.[37]

The Court now considers Petitioner's Motion for an Evidentiary Hearing, and the portions

---

ineffective assistance claims, regarding counsel's failure to object at certain points during trial, the Magistrate concluded that counsel had no legal basis to object, and therefore was not ineffective. R&R at 46–47, 49–50. Finally, the Magistrate rejected Rhodes's evidentiary challenge because she found no error in the Superior Court's analysis. R&R at 35–40.

[33] Doc. no. 22 ("Resp. Objs.").

[34] Resp. Objs. at 3.

[35] Resp. Objs. at 6.

[36] Resp. Objs. at 11–13.

[37] <u>See</u> Mot. for an Evidentiary Hr'g at 4 [doc. no. 29] (quoting <u>Keller v. Petsock</u>, 853 F.2d 1122, 1129 (3d Cir. 1998).

of the Magistrate's R&R regarding the Batson claim.[38]

## II. STANDARD OF REVIEW

Where a court refers a habeas petition to a magistrate judge, "the court shall make a de

novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made . . . [and] the court may accept, reject, or modify, in

whole or in part, the findings or recommendations by the magistrate."[39]

This Court's review of the petition for habeas corpus is governed by the Antiterrorism

and Effective Death Penalty Act of 1996 (AEDPA).[40]  That statute prohibits federal habeas relief

on any claim "adjudicated on the merits in state court proceedings," unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

The Parties dispute the appropriate standard of review: Petitioner argues that because his

claim was not adjudicated on the merits, AEDPA deference does not apply and this court should

---

[38] As stated, the Magistrate concluded that Rhodes's remaining claims lacked merit, and no objections
were filed to those parts of the R&R.  Because, after independent review of those claims, the court agrees
that they are without merit, those parts of the R&R are approved and adopted without discussion.

[39] 28 U.S.C. § 636(b)(1)(c).

[40] 28 U.S.C. § 2241 et seq., Hardcastle v. Horn, 368 F.3d 246, 254 (3d Cir. 2004), *cert. denied sub nom*
Beard v. Hardcastle, 125 S. Ct. 867 (2005).

9

review his claim de novo;[41] the Commonwealth disagrees. In Harrington v. Richter,[42] the

Supreme Court explained that "when a federal claim has been presented to a state court and the

state court has denied relief, it may be presumed that the state court adjudicated the claim on the

merits in the absence of any indication or state-law procedural principles to the contrary."[43]

Further, where the highest state court to consider a claim "identifie[s] the correct governing

principle, and then purport[s] to apply it," there has been an adjudication on the merits.[44]

Here, because the Superior Court was the highest Pennsylvania state court to consider the

Batson challenge, its May 2, 2005 decision is the relevant state court ruling.[45]  There, the

Superior Court (as discussed in greater depth below) clearly adjudicated the claim on the merits.

Indeed, the Superior Court devoted several pages of its opinion to Rhodes's Batson claims, in

which it "identified the correct governing legal principle, and then purported to apply it."[46]

Thus, the Superior Court's opinion constitutes an adjudication on the merits sufficient for

the purposes of the statute, and our review is governed by the deferential standards established by

AEDPA.  Under AEDPA, the state court's factual findings are "presumed to be correct" and the

---

[41] When a claim is not adjudicated on the merits, federal review of that claim "is not subject to AEDPA's deferential standard, and we therefore accord de novo review." Coombs v. Diguglielmo, 616 F.3d 255, 261 (3d Cir. 2010).

[42] --- U.S. ---, 131 S. Ct. 770 (2011).

[43] Id. at 785–86.

[44] Albrecht v. Horn, 485 F.3d 103, 116 (3d Cir. 2011), *cert denied sub nom* Albrecht v. Beard, 128 S. Ct. 890 (2008).

[45] See Adamson v. Cathel, 633 F.3d 248 (3d Cir. 2011) (citing Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008) ("[T]he highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision.").

[46] Albrecht, 485 F.3d at 116; See also Superior Ct. Op. 8–11 (enunciating the law of Batson as established under Pennsylvania law); supra, § III.B.

10

habeas petitioner carries the "burden of rebutting the presumption of correctness by clear and convincing evidence."[47]

Batson claims "constitute mixed questions of law and fact for purposes of federal habeas corpus review" and "the governing standard for such determinations is provided by the Supreme Court's decision in Williams v. Taylor."[48] In Williams, the Supreme Court explained that "a state court decision is 'contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Court's cases]' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Court] and nevertheless arrives at a result different from [its] precedent.'"[49] "A legal principle is 'clearly established' within the meaning of [2254(d)(1)] only when it is embodied in a holding of [the Supreme Court]."[50]

Thus, "the whole thrust of AEDPA is essentially to reserve federal habeas relief for those cases in which the state courts acted unreasonably."[51] Accordingly, this Court may not "grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices."[52] With these standards in mind, we turn to the task at hand.

---

[47] 28 U.S.C. §§ 2254(e)(1), 2254(d)(2).

[48] Hardcastle, 368 F.3d at 254 (citing Williams v. Taylor, 529 U.S. 362 (2000)).

[49] Id. (quoting Lockyer v. Andrade, 538 U.S. 63, 73 (2003)).

[50] Thaler v. Haynes, 130 S. Ct. 1171, 1173 (2010).

[51] Cullen, 131 S. Ct. at 1411–12 (Alito, J., concurring).

[52] Bond v. Beard, 539 F.3d 256 (3d Cir. 2008), *cert. denied.* 130 S. Ct. 58 (2009).

11

## III. DISCUSSION

### A.    THE LAW OF BATSON

In Batson v. Kentucky, the Supreme Court held that the deliberate or purposeful

exclusion of jurors based on race violates the Equal Protection Clause of the United States

Constitution.[53]  Under the "familiar three-step Batson analysis":

> First, a defendant must make a prima facie showing that a peremptory challenge
> has been exercised on the basis of race.  Second, if that showing has been made,
> the prosecutor must offer a race-neutral basis for striking the juror in question.
> Third, in light of the parties' submissions, the trial court must determine whether
> the defendant has shown purposeful discrimination.[54]

Batson further explained that "a prima facie case of discrimination can be made out by offering a

wide variety of evidence, so long as the sum of the proffered facts gives 'rise to an inference of

discriminatory purpose.'"[55]  Thus:

> A defendant may establish a prima facie case of purposeful discrimination in
> selection of the petit jury solely on evidence concerning the prosecutor's exercise
> of peremptory challenges at the defendant's trial.  To establish such a case, the
> defendant first must show that he is a member of a cognizable racial group, and
> that the prosecutor has exercised peremptory challenges to remove from the venire
> members of the defendant's race.  Second, the defendant is entitled to rely on the
> fact, as to which there can be no dispute, that peremptory challenges constitute a
> jury selection practice that permits 'those to discriminate who are of a mind to
> discriminate.'  Finally, the defendant must show that these facts and any other
> relevant circumstances raise an inference that the prosecutor used that practice to
> exclude the veniremen from the petit jury on account of their race.[56]

Batson suggested a few possible indicators of a prima facie case, including a disproportionate

---

[53] Batson, 476 U.S. at 84; see also Williams v. Beard, 637 F.3d 195, 205 (3d Cir. 2011).

[54] Lark v. Secretary Pa. Dep't of Corr., --- F.3d ---, 2011 WL 2409297, at * 7 (3d Cir. 2011) (citing Miller-El v. Cockrell, 537 U.S. 322, 328–29 (2003)).

[55] Johnson v. California, 545 U.S. 162, 169 (2005) (citing Batson, 476 U.S. at 94).

[56] Batson, 476 U.S. at 96.

impact, a pattern of strikes against jurors of a particular race, or the prosecutor's questions and

statements during voir dire, but entrusted the task of fleshing out the Batson framework to the

trial courts.[57] Since Batson, the Supreme Court has not addressed whether, in the absence of

other evidence of racial animus, a prosecutor's use of a "below the line" strike of a non-African-

American juror which results in an African-American juror serving as an alternate is an indicator

of a prima facie case under Batson.

B.    THE SUPERIOR COURT'S RULING

The Pennsylvania Superior Court began its analysis of the Batson challenges by correctly

setting forth the law of Batson (as interpreted by Pennsylvania courts):

> The striking of a number of individuals belonging to some cognizable minority
> group is not dispositive that a Batson violation has occurred. Rather, it is a
> combination of factors in the selection of the jury that raises the necessary
> inference of purposeful discrimination. To sustain a prima facie case of
> purposeful discrimination in the jury selection process under Batson the defendant
> must show that: (1) the defendant is a member of a cognizable racial group and
> that the prosecutor has exercised peremptory challenges to remove from the venire
> members of the defendant's race; (2) the peremptory challenges constitute a jury
> selection practice that permits those to discriminate who are of a mind to
> discriminate; and (3) facts and any other relevant circumstances raise an inference
> that the prosecutor used that practice to exclude the venire persons from the petit
> jury on account of their race. . . .[58]

In addition, the Superior Court's opinion emphasized that the trial court must "consider the

totality of the circumstances," and that the trial court's findings are given great deference because

"[t]he trial judge has before him or her the entire venire and is well situated to detect whether a

challenge to the seating of one juror is a pattern of singling out members of a single race for

---

[57] Id. at 96–97.

[58] Super. Ct. Op. 8–9 (citing Commonwealth v. Rico, 711 A.2d 990. 993 (Pa. 1998)).

peremptory challenges."[59]

Turning to the trial record, the Superior Court summarized Rhodes's two <u>Batson</u>

challenges:

> With respect to the peremptory strike used by the prosecution to remove juror no.
> 5, an African-American woman, the trial judge found that a <u>prima facie</u> case for a
> <u>Batson</u> challenge had been made, and therefore, directed the prosecution to give
> its reasons for the strike. Finding the reasons to be racially neutral, the trial court
> denied the <u>Batson</u> challenge. With regard to the final peremptory strike, which
> was not utilized to remove an African American, the trial court concluded that no
> pattern existed.[60]

The Superior Court affirmed the Trial Court, holding that "the Trial Court's denial of

Rhodes's <u>Batson</u> challenge based on the absence of purposeful discrimination was not clearly

erroneous."[61] That conclusion, the Superior Court held, was consistent with its own review of

the record, which did not reveal "any pattern of singling out members of a single race for

peremptory challenges."[62]

C.    THE MAGISTRATE JUDGE'S RECOMMENDATION

In the Magistrate's view, "the Superior Court's interpretation of the trial judge's ruling on

the <u>Batson</u> challenge to prospective juror number 41 was unreasonable in light of the record."[63]

---

[59] <u>Id.</u> at 10.

[60] <u>Id.</u> at 11.

[61] <u>Id.</u>

[62] <u>Id.</u>

[63] <u>Id.</u> at 18. It is unclear whether § 2254(d)(2) applies to a state appellate courts' unreasonable
interpretation of a lower court's ruling. In support of that proposition, the Magistrate cites only <u>Hall v.</u>
<u>Director of Corrections</u>, 343 F. 3d 976, 983 (9th Cir. 2003). Given the dearth of case law support for this
proposition, we conduct our review of the Superior Court's adjudication solely to determine whether it
unreasonably interpreted the evidence from the Trial Court to conclude that no discriminatory pattern
existed.

14

Specifically, the Magistrate faulted the Superior Court's statement that "[w]ith regard to the final peremptory strike, which was not utilized to remove an African American, the Trial Court concluded that no pattern existed."[64] That holding, according to the Magistrate, misconstrued the record because "[r]eading the transcript of the objection and Trial Court's rejection of it, and the Trial Court's written opinion, it is clear that the court ruled as a matter of law and that it did not reach the merits of the Batson claim."[65] Stated differently, the Magistrate concluded that, in regard to juror number 41, the Trial Court never began a Batson analysis and therefore, did not analyze whether a discriminatory pattern existed. Therefore, in her view, the Superior Court's interpretation was fatally flawed, and not entitled to deference.[66] We review the Magistrate's ruling de novo.

D.    ANALYSIS

1.    Did the Superior Court Unreasonably Determine the Facts?

The Magistrate concluded that the Superior Court's ruling was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." We disagree.

Under § 2254(d)(2), the Court must examine whether the petitioner has demonstrated by clear and convincing evidence that the state court's determination of the facts was unreasonable

---

[64] Super. Ct. Op. at 11.

[65] R&R at 19.

[66] The Magistrate also examined the state courts' adjudication of Juror Number 5: "The Superior Court found that the Trial Court's determination that there was no purposeful discrimination was not clearly erroneous. Thus, the state courts' determination is consistent with the pertinent case law and did not involve an unreasonable determination of the facts." R&R at 21. Because the Commonwealth does not object to that holding, and because we agree with the Magistrate's analysis on that matter, we see no need to further review the strike of Juror Number 5 here.

in light of the record.[67] State court factual findings are presumptively correct; it is the
petitioner's burden to demonstrate otherwise.[68]

The record before the Superior Court, which it independently reviewed, demonstrated

that: (1) the forty-five person venire consisted of four African Americans, two of whom were

struck for cause, one of whom was struck using a peremptory strike; (2) after using a peremptory

strike against an African-American juror, the prosecutor articulated a valid non-discriminatory

reason; and that  (3) the prosecutor used his final strike against a non-African-American juror,

but that strike outside the presumptive pool resulted in Juror Number 33, an African-American

female, remaining an alternate juror. Significantly, transcripts from jury selection indicated that

before rejecting Rhodes's challenge to the peremptory strike against Juror Number 41, the trial

judge considered the composition of the venire and the jury along with the prosecution's use of

peremptory challenges.[69]

---

[67] See Rountree, 640 F.3d 530, 537–38 (3d Cir. 2011) (citing Rice v. Collins, 546 U.S. 333, 338–39
(2006)).

[68] Id.

[69] The following exchange occurred when the defense raised its objection to juror number 41:

Defense Counsel:     . . . . [J]ust following up briefly on my Batson challenge, I would note for the
                     record that because of the way Mr. Sander exercised his challenges, he struck
                     outside those potential jurors who could have been selected by striking Number
                     41, C-7, thereby making [number 33] an alternate, the only other black female
                     that could have possibly served on this jury.

                     So if I go below the line on this case, Juror Number 37, he cleverly ensured that
                     no black jurors would serve on the 12 person jury panel. And I would just note
                     that for the record.

                     . . . .

The Court:           . . . . You made the original challenge as to the African-American Juror Number
                     5. On the record in chambers, Mr. Sander put on his race neutral reasons for his

16

The Superior Court also had the benefit of the Trial Court's post-trial opinion. Although

the Trial Court did not specifically address the final "below the line" peremptory strike, it

concluded in certain terms that "the Commonwealth's conduct during jury selection [did] not

support a finding that it improperly precluded African Americans from being selected to the

jury." [70]

Applying a highly deferential level of review, as we must, we cannot conclude that the

Superior Court unreasonably determined the facts in light of the evidence presented. The trial

---

|  | making a [peremptory] strike. We had the next African-American juror was Number 21 who was stricken for cause. |
|--|--|
|  | . . . . |
|  | The next African-American juror is Number 33 . . . who is sitting as an alternate in this case, and the fourth African-American juror that was here on this panel . . . was stricken for cause. However he struck, he struck previous to this and you had already made the challenges as to Number 5. |
|  | Where that left everybody to come up as far as an alternate, in fact an African-American is seated in this case. I don't know how -- the way I count it, I don't know how another one would have made it anyway |
| Defense Counsel: | If he had exercised a strike among the first 37 which if you take the cause challenges into effect and you each get seven [peremptories] and 14 plus 12 is 26, counting in the first cause challenges that would draw the line after 37. By striking after 37, he caused the line to fall back, thereby knocking out [Juror No. 33] as a possible juror. |
| The Court: | Enunciate for me how Batson says that you can then -- when he struck a non-African-American below the line how that is included in a Batson challenge. |
| Defense Counsel: | Because the effect of it was to deny any black African-American juror on the 12 person jury. |
| The Court: | Your objection is so noted and I would overrule your challenge in regard to that. |

[70] Trial Ct. Op. at 10.

17

transcript, read in conjunction with the Trial Court's post-trial opinion, supports the Superior

Court's conclusion, based on the totality of the circumstances, that the Prosecutor did not

exercise his strikes in a discriminatory manner. There was no evidence of record that the below-

the line strike of non-African-American Juror Number 41 was discriminatory. Because the

Defendant did not adduce evidence "giving rise to an inference of a discriminatory purpose," it

failed to establish a prima facie case under Batson. Thus, the Superior Court's ruling was not an

unreasonable determination of facts in light of the evidence presented.

### 2. Was the decision of the Superior Court contrary to, or an unreasonable application of, precedent of the Supreme Court of the United States?

Because we have concluded that the Superior Court's ruling was not an unreasonable

determination of facts in light of the evidence presented under § 2254(d)(2), the writ may only

issue if Rhodes is entitled to relief under § 2254(d)(1).[71]  Section 2254(d)(1) requires two legal

inquiries: the first is whether the state court decision was "contrary to clearly established Federal

law, as determined by the Supreme Court; the second is whether the state court decision

"involved an unreasonable application of" such law.[72]

A decision that is "contrary to . . . clearly established federal law means just

---

[71] Because we conclude, above, that the Superior Court's decision did not unreasonably misconstrue the trial record and is therefore entitled to deference, we do not address the Magistrate's analysis of the Trial Court's ruling. Where a federal court finds a 2254(d) error, it must review the relevant state court ruling de novo under the correct federal standard. See Real, 600 F.3d at 309 (finding that the Superior Court's decision was "contrary to" federal law and analyzing the claim de novo under the correct federal standard."). Here, after finding a 2254(d) error, the Magistrate analyzed the Trial Court's adjudication under AEDPA. But the Trial Court's ruling is irrelevant to this discussion; the relevant decision is that of the Superior Court. Consequently, it is the sole focus of this court's analysis.

[72] See Rountree, 640 F.3d at 537.

18

that—diametrically different, opposite in character or nature, or mutually opposed."[73] This can happen in one of two ways: "either the state court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"[74] The Supreme Court has neither directly addressed whether a strike against a non-African-American juror which causes an African-American juror to remain an alternate juror implicates Batson, nor has it confronted "materially indistinguishable" facts. Thus, the Superior Court's ruling was not "contrary to" Supreme Court precedent.

Consequently, the sole question remaining is whether the state court was unreasonable in its failure to extend the rule of Batson to the below-the-line strike. "[A]n unreasonable application of Supreme Court precedent occurs when a state court applies the correct rule to specific facts in an objectively unreasonable way."[75] Alternatively, a "fail[ure] to extend a rule may also be deemed to unreasonably apply the correct rule."[76] The unreasonable application test is an objective one—"a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly."[77]

"In reviewing the reasonableness of the state courts' application of Supreme Court

---

[73] See Wilkerson v. Klem, 412 F.3d 449, 451 (3d Cir. 2005) (citation & quotations omitted) *cert. denied* 126 S. Ct. 1616 (2006).

[74] Id. (quoting Williams, 529 U.S. at 405).

[75] Fischetti v. Johnson, 384 F.3d 140, 148 (3d Cir. 2004), overruled on other grounds by Greene v. Palakovich, 606 F.3d 85, 94 n.6 (3d Cir. 2010).

[76] Id. at 148.

[77] Varner v. Thomas, 428 F.3d 491, 497 (3d Cir. 2005) *cert. denied sub nom* Palakovich v. Thomas, 127 S. Ct. 928 (2007).

19

precedent . . . the issue is whether Supreme Court law 'dictated a result.'"[78] And "we must use as our point of departure the specific holdings of the" Supreme Court to measure whether the state court's decision was an "unreasonable application of Supreme Court precedent."[79] As noted, above, there are no Supreme Court decisions involving "below the line" strikes of non-African-American jurors. Moreover, the Superior Court's ruling was consistent with the law of Batson: It affirmed the Trial Court's ruling based on its conclusion that there was no "pattern of singling out members of a single race for peremptory strikes."

And although "court of appeals precedent is irrelevant to the ultimate issue before us,"[80] we note that here, a non-precedential Third Circuit opinion provides a basis for the view taken by the state court in this case. In United States v. Tigget, the panel rejected a factually analogous Batson challenge.[81] There, the defendant argued that the Government discriminated against an African-American juror by not exercising its final two peremptory strikes. "Tigget's argument [was] that when the Government refused to exercise its final two strikes, it effectively struck . . . an African American who was next in line to enter the jury pool."[82] Here, although the prosecutor did not explicitly refuse to exercise its final peremptory strike, it effectively "wasted" its strike by using it "below the line."

Finding that it "need not decide whether such a claim is viable in the abstract," the Third

[78] Fischetti, 384 F.3d at 150–51.

[79] Id.

[80] Wilkerson 412 F.3d at 455.

[81] United States v. Tigget, 219 F. App'x. 163, 168 (3d Cir. 2007) (non-precedential).

[82] Id. at 168.

20

Circuit ruled that:

> Tigget has not made out a prima facie case for unlawful discrimination. The mere
> fact that the Government struck *one* African American and refused to strike any
> further jurors, which had the effect of keeping one African American from moving
> into jury pool, *simply does not establish the sort of pattern of behavior from which
> to draw an inference of discrimination,* particularly when the Government used
> most of its peremptory strikes against non-African Americans.[83]

It follows that the Superior Court did not unreasonably apply Supreme Court precedent by

holding that the prosecutor did not strike jurors in a discriminatory manner. Here, as in Tigget, the

Government used most of its peremptory strikes against non-African-Americans. The prosecutor

used only one of his peremptory challenges against an African American—Juror No. 5—and he

articulated a satisfactory race-neutral reason to justify the strike. No other evidence bolsters

Rhodes' claim that the strike was discriminatory. Thus, the Superior Court's adjudication was not

in error.[84]

Even were it appropriate to disregard the Superior Court's adjudication and examine the

Trial Court's ruling, as did the Magistrate, our conclusion would be the same. Indeed, it is difficult

to understand the Magistrate's finding that the trial court's ruling was "contrary to clearly

established law," given her own admission that there is a "dearth of applicable case law."[85] In her

analysis, the Magistrate improperly disregarded the Supreme Court's instruction in Yarborough v.

Alvarado that "[t]he more general the rule, the more leeway courts have in reaching outcomes in

---

[83] Id.

[84] R&R at 30.

[85] R&R at 25.

21

case-by-case determinations."[86] Instead, the Magistrate looked to the "underpinnings of Batson,"

from which she derived the broad principle that "discriminatory motive in jury selection is

prohibited."[87] This principle, according to the Magistrate, compelled the conclusion that *any* strike

that results in the exclusion of an African-American juror, whether directly or indirectly, and *even

in the absence of any other evidence of discriminatory motive*, should trigger a Batson inquiry.[88]

Moreover, by the Magistrate's own analysis and citation, "fairminded jurists"[89] could—and

have—disagreed over whether similar strikes implicate Batson. In her report, she discussed three

federal courts of appeals, including the Third Circuit, that had considered "variations on this

theme."[90] Notwithstanding that each of those courts took different approaches to resolving the

question (and arrived at different results), the Magistrate concluded that "given the broad basis for

the Batson ruling, it would be unreasonable not to extend Batson to Rhodes's case."

We therefore hold that the state court's ruling was reasonable. Although the question of

what an "unreasonable application" of law might be difficult in some cases, that is not true here.

---

[86] 541 U.S. 652, 664 (2004).

[87] R&R at 27.

[88] Specifically, the Magistrate concluded that: "[T]he sole legal question is whether it is reasonable to conclude that a strike "below the line," if it was exercised with the knowledge that the strike would prevent the seating of an African-American on the jury, does not require inquiry under Batson. Given the very clear underpinnings and language of Batson, I conclude that it is not." R&R at 30.

[89] Yarborough, 541 U.S. at 654 (finding that state court adjudication was not unreasonable where "fairminded jurists" could disagree).

[90] See R&R at 25 (citing Tiggett, 219 F. App'x at 167–68; Thompson v. Johnson, No. 07-3825, 291 F. App'x. 477 (3d Cir. 2008) (not addressing whether the forfeiture of a strike is an effective strike because it had been waived); United States v. Esparza-Gonzalez, 422 F.3d 897, 902 (9th Cir. 2005) (finding that waiver of peremptory strikes can form the basis of a Batson challenge); Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) *cert. denied* 122 S. Ct. 822 (2002) (state court's determination that discriminatory exclusion of alternate juror did not violate Batson was not unreasonable)).

22

The state court's application of Batson fits "within the matrix of prior [Supreme Court] cases."

"We cannot grant relief under AEDPA by conducting our own independent inquiry into whether

the state court was correct as a de novo matter."[91]

### 3. Is a federal evidentiary hearing appropriate?

Under the AEDPA, the federal court has discretion to grant an evidentiary hearing to

"develop the factual basis of a claim" in "rare" circumstances.[92] In Cullen v. Pinholster, the

Supreme Court recently explained that under 2254(d), a habeas court's review is "to the record that

was before the state court that adjudicated the claim on the merits."[93] A Court conducting its

review of a claim adjudicated on the merits, pursuant to 2254(d) may not conduct an evidentiary

hearing to gather new evidence.[94] Thus, Rhodes's Motion for an evidentiary hearing to develop his

---

[91] Yarborough, 541 U.S. at 665.

[92] Cullen, 131 S. Ct. at 1411 (Alito, J., concurring). Section 2254(e)(2) provides that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found that applicant guilty of the underlying offense.

[93] Id.

[94] Id. at 1401. The Cullen Court noted that its construction did not render § 2254(e)(2), which sets limits on the availability of evidentiary hearings superfluous. That subsection may apply when a constitutional claim was not "adjudicated on the merits." Id at 1400–03.

Batson claim is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court denies the pending Petition for Writ of Habeas Corpus and approves and adopts in part and rejects in part Magistrate Judge Hey's Report and Recommendation dated March 26, 2009. The Court sustains Respondent's Objections to the Report and Recommendation, and rejects that part of the R&R recommending habeas relief on the basis of petitioner's Batson claim. The Court approves and adopts that part of the Report and Recommendation recommending denial of relief on petitioner's ineffective assistance and evidentiary claims. Petitioner's Motion for an Evidentiary Hearing is denied.

A corresponding order follows.

24